## Warrick et al. v. Zoning Board of Adjustment, etc., et al.

*White, Williams & Scott*, for plaintiffs.

*G. Coe Farrier*, assistant city solicitor, for defendants.

SMITH, P. J., June 19, 1951.—This is an appeal by writ of certiorari from the decision of the zoning board of adjustment granting a certificate of exception under section 16, subsec. 30, of the Zoning Ordinance of August 10, 1933.

### Findings of Fact

1. Emmett S. Lottig conducts a dry cleaning business on his premises, situate 23, 25 and 27 West Harvey Street, Philadelphia.

2. Dorothy and Marie Warrick are the owners of premises situate 31 West Harvey Street, aforesaid.

3. Frank Deacon is the owner of 40 West Walnut Lane, aforesaid.

4. Elfreida W. Currie is the owner of 50 West Walnut Lane, aforesaid.

5. Harvey Street is in what is designated as "A" commercial zone.

6. Emmett S. Lottig commenced to operate a dry cleaning plant on his premises on June 1, 1945.

7. On March 7, 1950, Emmett S. Lottig made an application for the use of a dry cleaning plant on his premises which, after a public hearing, was refused

by the bureau of zoning and engineering on March 17, 1950, "based upon the reason that a dry cleaning plant is not permitted in an 'A' commercial district".

8. No appeal was taken by Lottig from the order of the zoning board.

9. Lottig, on June 7, 1950, was fined by Magistrate Dogole for operating the plant without a permit.

10. Lottig then presented a new application for a certificate of exception under section 16, subsec. 30, of the Zoning Ordinance of August 10, 1933, to operate a dry cleaning plant, on June 12, 1950.

11. The Zoning Board of Adjustment after a hearing on June 25, 1950, granted a permit to Lottig to operate a dry cleaning plant on his premises as of July 17, 1950, "upon the ground as stated in the order that the said premises had been employed as a nonconforming use, to wit, an automobile body and repair shop on the date of the adoption of the Zoning Ordinance of August 10, 1933".

12. On August 10, 1933, there was conducted on the premises now occupied by Emmett S. Lottig, a nonconforming use, to wit, a storage garage and automobile repair shop.

13. The premises since 1933 up to 1945 was used by the same type of nonconforming use.

14. There is no vibration coming from machinery in the plant of defendant which would annoy any reasonable person in the neighborhood.

15. There is no noxious odor emanating from the plant of defendant that is offensive to any resident in this neighborhood.

16. That there is no soot coming from the smokestack of defendant's plant which could reasonably be considered a nuisance.

17. Plaintiffs have failed to make out a reasonable cause of action.

18. The Fire Marshal of the City of Philadelphia has granted to defendant a permit to use his premises as a dry cleaning plant.

### Discussion

It is the contention of appellants that the refusal of the zoning board to grant a variance from which no appeal has been taken is res judicata, preventing the filing of a new application for a certificate of exception. They depend upon Krink's Appeal, 332 Pa. 236. In that case an application was filed to change the occupation of the premises from one nonconforming use to another. The original nonconforming use was an automobile repair shop. The second nonconforming use for which application was made was a restaurant and beer garden. This application was refused by the zoning board and no appeal was taken. The son of the applicant then filed a new application, which was refused. The matter then came upon appeal to the Supreme Court. The Supreme Court said:

"The proceedings before the board had determined that pursuant to the ordinance the premises in question could not be used as a restaurant and beer garden . . . that the proposed use was 'contrary to ordinance'."

An examination of this case, argued earlier in 128 Pa. Superior Court 405, clearly shows that the operation of a restaurant and beer garden was not permitted under article II, sec. 7, of the McKeesport Ordinance of October 16, 1933. Baldrige, J. (on p. 408), said:

"If a violation of the ordinance is found, as here, by a zoning board, a court is warranted in reversing the finding of the administrative body only when there is a manifest and flagrant abuse of discretion."

In the case at bar, section 16, subsec. 30, of the Philadelphia Ordinance of August 10, 1933, states the "specific uses permitted in this district ('A' commercial) shall be the erection, construction, alteration or use of

buildings or premises and/or land for: (30) Dry cleaning (when approved by the Fire Marshall)". Under subsection 32 of sec. 16 of this ordinance "garages" were likewise stated as a use. The reason stated by the zoning board on March 17, 1950, in refusing defendant's application upon the ground "that a dry cleaning plant is not permitted in an 'A' commercial neighborhood" is contrary to the provisions of the ordinance and seems to show that the board disregarded the facts and circumstances in making its order.

By analogy it is similar to a compulsory nonsuit. Where such a nonsuit is taken, it is not a judgment against a plaintiff unless he files a motion to remove it. Then if the court acts upon the motion by dismissing it, it would bar a second suit: Fleming v. Insurance Company of Pennsylvania, 6 Pa. L. J. 373; Fine v. Soifer, 288 Pa. 164, 173. Thus the matter does not become res judicata until the motion to take off the nonsuit is finally determined: Lessy v. The Great Atlantic and Pacific Tea Company, 13 D. & C. 400. The Act of June 23, 1931, P. L. 932, has no application here. Section 4113 of that act says:

"Any person or persons . . . aggrieved by any decision of the board of appeals . . . may present to the Court of Common Pleas of the respective county a petition duly verified, setting forth that such decision is illegal in whole or in part, specifying the grounds of the illegality. Such petition must be presented to the court within thirty days after the filing of the decision in the office of the board."

The error of the zoning board in the case at bar was not a legal error. It was a mistake of fact and could be corrected at a later time by the board. In the Crawford Zoning Case, 358 Pa. 636, 640, Mr. Chief Justice Maxey said:

"The court properly held that the board's earlier action with regard to the application submitted by

Elva G. Reinecker did not conclude appellant's rights since the board entertained the second appeal and decided it on its merits."

In Triolo et al. v. Exley et al. 358 Pa. 555, 559, the zoning board had refused an application to use the premises of appellee as an abattoir for the reason that an abattoir was not permitted in an "A Commercial" district. Eleven months thereafter appellee filed a second application and the use was permitted by the zoning board under a certificate of variance. Mr. Justice Patterson said:

"Conceding the power of the Board of Adjustment to grant a certificate of variance, appellants contend that the initial reversal of the Board's action constituted a holding that the Board acted arbitrarily and capriciously. This contention is without merit. The action of the Board was there based upon the belief that where premises had previously been used in a given manner regardless of the period of time which might have elapsed during which the use was discontinued, Section 4(4) of the Zoning Ordinance, supra, constituted a mandate to permit a resumption of such non-conforming use."

Mr. Justice Horace Stern in Ventresca v. Exley et al., 358 Pa. 98, stated that a grant of a variance depends upon the circumstances in the particular case.

The next important question is whether the use of the applicant Lottig of the premises constitutes a common-law nuisance under section 15 of the ordinance of August 10, 1933. That section provides "no trade, industry or use that is noxious or offensive by reason of the emission of odor, dust, smoke, gas or noise will be allowed in any commercial district." These premises since 1933 had been used as a garage and auto repair shop. The applicant took possession of the premises in 1945 and at once started to operate a dry cleaning

plant. There is a conflict in the testimony as to whether the operation of the applicant's plant constitutes a nuisance. Marie E. Warrick, residing at 31 West Harvey Street, testified that the plant operation caused vibrations in her home, cracks in the walls, that she suffered annoyance from noxious odors emanating from the plant, and that soot came out from applicant's smokestack. Her sister, Dorothea Warrick, testified that dirt and soot came from the plant and the vibrations made her windows rattle and also the rooms of her house. Elfreida Currie, residing at 50 West Walnut Lane, testified that she was annoyed by chemical odors from the plant, with the black smoke from the stack and noise from blasts of steam. Gertrude E. Herzog, residing at 6023 McCallum Street (whose back lot adjoins that of Lottig) testified that she is annoyed by dirt, smoke and odors. Plaintiffs then called witnesses to corroborate the other witnesses, to wit, Winifred Spruance, of 45 West Walnut Lane; Carrie Reed, of 6006 Concord Street, and Helen Beigne, of 6010 McCallum Street, who resides about 100 feet from the Lottig plant. Defendant then called as his witnesses Earl E. Barber, whose real estate office is located at the northwest corner of Harvey Street and Germantown Avenue (about 200 feet from the plant). He testified that he notices no noxious odors, no vibrations, no more soot from applicant's plant than from stack of a Methodist Church at the northeast corner of the intersection. Theresa Thompson, residing at 29 West Harvey Street (next door to applicant's plant), testified that she noticed no vibrations, no odors and that no soot came in the yard. Francis X. Mahoney, residing at 17 West Harvey Street, testified that he lives about 70 feet from the Lottig plant and notices no odors and that other buildings in the vicinity emit more smoke than the Lottig plant does. Baker West, who resides

at 6016 Concord Street, testified that there were no vibrations in his house, no noxious odors, no annoying soot. Edwin Schaeffer, who resides at 41 West Harvey Street (about 75 feet from the plant), testified that he noticed no vibrations, no odors and no soot. Benjamin Vincent Cronin, who resides at 40 West Harvey Street, testified that he lives about 125 feet from the plant and notices no vibrations, no odors, and no soot. Katherine Peyton, who resides at 33 West Harvey Street, testified that she notices no vibrations, no annoying odors, and that there is no soot on the wash in her rear yard.

Defendant then called Oscar Wurtenburg, a consulting engineer, who testified that with a M.S.A. combustible gas indicator he went to a number of places near to and adjacent to the applicant's plant. He testified that this indicator measures combustible gas shown in one million parts of the atmosphere. He testified that the Stoddard solvent is a solvent used by the applicant in his plant; that he made tests at the outlet pipe of the plant and a number of other places about and near to the homes of the plaintiffs. He further testified that when 25 feet away from the pipe outlet, he found 25 parts per million, which is slightly discernible by nose and that beyond this distance from the plant of Lottig the odor of the solvent was not discernible by nose and was not obnoxious.

Albert S. Orr, director of the refinery technological laboratory of the Sun Oil Company, testified that he knew the Stoddard solvent and that there would be no odor where it consisted of less than 25 parts per million of atmosphere.

The chancellor visited the site of the plant of Lottig, and the neighborhood in which the various witnesses resided, to ascertain the conditions as he found them to exist. We realize that we must not substitute our

findings of fact for those presented in evidence, but we believe it may have some bearing on the credibility of the witnesses who appeared in court. We are of the opinion that there is no machinery within the plant of defendant the operation of which causes any annoying vibrations sufficient to constitute a nuisance to any one residing in this neighborhood; that there are no noxious odors emanating from the plant which constitute a nuisance to any one residing in this neighborhood; and that there is not sufficient soot coming from the smokestack of defendant to cause annoyance to any resident in the neighborhood.

### Conclusions of Law

1. The zoning board of adjustment was within its legal rights after it had refused a first application to entertain a second appeal asking for a certificate of exception and to decide the second application on its merits.

2. The grant of a certificate of exception by the zoning board depends upon the circumstances of the particular case and was within the plenary discretion of the board.

3. The action of the zoning board of adjustment in granting a certificate of exception was not an abuse of discretion.

4. The facts of this case do not justify a finding of law that plaintiffs were annoyed by any material vibrations emanating from the plant of the applicants.

5. The facts of this case do not justify a finding of law that plaintiffs suffered any material annoyance from noxious odors in soot emanating from the plant of the applicant.

6. Plaintiffs have failed to present convincing evidence showing that applicant is responsible for any common law nuisance.

7. The appeal is dismissed.

*Order of Court*

And now, to wit, June 19, 1951, the appeal is dismissed and the costs placed upon plaintiffs.